UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA R. CORONADO,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:19-cv-00606-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.    Introduction**

Plaintiff Teresa R. Coronado ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 15 and 16. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

*///*

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 10.

1

**II.     Procedural Background**

On May 6, 2015, Plaintiff filed an application for supplemental security income alleging disability beginning April 30, 2015.  AR 15.  The Commissioner denied the application initially on August 3, 2015 and following reconsideration on December 16, 2015.  AR 15.

On January 5, 2016, Plaintiff filed a request for a hearing.  AR 15.  Administrative Law Judge Joyce Frost-Wolf presided over an administrative hearing on February 2, 2018.  AR 28-48. Plaintiff appeared and was represented by an attorney.  AR 28.  On May 22, 2018, the ALJ denied Plaintiff's application.  AR 15-23.

The Appeals Council denied review on March 1, 2019.  AR 1-6.  On May 6, 2019, Plaintiff filed a complaint in this Court.  Doc. 1.

**III.     Factual Background**

**A. Plaintiff's Testimony**

Plaintiff (born January 1964) is a high school graduate.  AR 33.  Although she babysat part time for her grandchildren for several months in 2007, Plaintiff had no substantial gainful activity.  AR 34.

Because of her knee pain Plaintiff had been using a walker since October 2016.  AR 35. Asked about her use of assistive devices before October 2016, Plaintiff explained, "I just found a doctor that would give me the walker, and some wouldn't cover the insurance."  AR 36.  Plaintiff used the walker even when she was performing an activity such as washing dishes because sometimes her legs gave out and she felt that she might fall.  AR 36-37.  Plaintiff had never actually fallen.  AR 40.

Other than doing dishes Plaintiff's husband, who was retired, performed all household chores including vacuuming, cooking and grocery shopping.  AR 37.  Plaintiff did not leave her home except to visit the doctor.  AR 38.

Plaintiff experienced side effects from her medications including dizziness and fatigue. AR 38. In addition, she thought her diabetes medication might cause her to sweat more in the summer.  AR 38.  She treated her leg pain with pain medication and elevation.  AR 38.  Plaintiff elevated her legs four or five hours daily.  AR 39.

When Plaintiff walked her knees hurt and she became short of breath. AR 39. She could not climb a flight of stairs. AR 39. Cold and rainy weather aggravated her knee pain. AR 39. Plaintiff could not kneel because she probably would not be able to get back up. AR 39-40. If she dropped an object she could not bend over and pick it up. AR 40. Plaintiff could not squat. AR 40.

Plaintiff felt depressed "just about every day," and experienced anxiety about five out of seven days. AR 41-43. Plaintiff explained her depression by saying that she did not like to be around a lot of people. AR 38, 41. Her memory was poor. AR 43. She also complained of poor appetite, testifying that it had caused her to lose about fifty pounds without trying. AR 42.

### B. Medical Records

Plaintiff was 54 inches tall. AR 232. From the time of her application, her weight ranged from 248 to 258 pounds. AR 232, 238, 245.

Plaintiff was treated at Westside Medical Mendota (WMM) from April 2015 through January 2018, for complaints including difficulty sleeping, difficulty swallowing, daytime fatigue, dizziness, rapid heartbeat, shortness of breath and swelling of her lower extremities. AR 232-236, 144-57, 287-325.

On April 21, 2015, Plaintiff had an appointment for a thyroid check and prescription refills. AR 236. Her treating professionals[2] attributed Plaintiff's dizziness and fatigue to iron deficiency anemia. AR 233. On April 24, 2015, the examiner noted that Plaintiff had a twenty-year history of anemia and hypothyroidism. AR 235. By April 30, 2015, her blood pressure had improved with Lisinopril. AR 234. An April 29, 2015 note reported that Plaintiff was improving and had more energy. AR 225. A treatment note dated October 2015 reported an overcorrection of Plaintiff's hypothyroid and reduced her medication accordingly. AR 247. By October 2017, Plaintiff's hypothyroidism was "subclinical." AR 298.

Plaintiff received inhalers for asthma. AR 300. Her allergy tests were consistently negative. AR 222, 256.

---

[2] Because each handwritten appointment note includes only an illegible signature, the Court is unable to identify the identity or professional status of the person(s) examining Plaintiff on each visit.

3

In July 2015, Plaintiff reported less frequent dizziness but continued shortness of breath. AR 249. Treatment notes indicated that Plaintiff's complaints of depression should resolve with continued vitamin D supplementation. AR 249. In September 2015, Plaintiff complained of severe low back pain (ranging from 6/10 to 10/10) and added that her medications were not improving her dizziness and fatigue. AR 248. 8. In October 2015, Plaintiff complained of ankle swelling and pain without any accident or injury. AR 258.

In June and October 2015, Plaintiff was treated by cardiologist Bipin Joshi, M.D.. AR 258, 269-73. Echocardiogram studies were normal except for trivial mitral valve and tricuspid valve regurgitation. AR 258. Dr. Joshi diagnosed dyspnea (unspecified), essential hypertension and obesity. AR 271. He advised Plaintiff to take her medications; consume a diet low in sodium, cholesterol and fat; exercise thirty to forty minutes daily six days a week; and lose weight. AR 272.

From December 2015 through September 2016, Plaintiff missed nine appointments at WMM. AR 310, 312-13. When she came to have forms completed in September 2016, Plaintiff complained of anxiety and continued tiredness. AR 307-09. In October 2016, Nurse Ruth A. Thomas, F.N.P., ordered a walker for Plaintiff. AR 325. Plaintiff missed six appointments in December 2016. AR 304-05.

In December 2017 and January 2018, WMM also treated Plaintiff for right knee pain following a fall. AR 288-89, 291-97. Nurse Thomas directed Plaintiff to apply hot and cold compresses for pain relief and referred Plaintiff for magnetic resonance imaging. AR 294 In December 2017, Jeffrey Child, M.D., evaluated x-rays of Plaintiff's right knee and diagnosed mild bicompartmental osteoarthritis. AR 274. Following magnetic resonance imaging in January 2018, however, Dr. Child reported:

> Severe grade 4 articular cartilage degenerative change in medial compartment as evidenced by total loss of articular cartilage in both femoral and tibial aspect with juxta articular marrow signal change and resultant secondary medial extrusion of the medial meniscus but no meniscal tear.

AR 283.

///

**IV.     Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V.     The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

### VI. Summary of the ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of May 6, 2015. AR 17. Her only severe impairment was degenerative changes of the right knee. AR 17  Plaintiff's severe impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). AR 19.

The ALJ concluded that Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). AR 19. Plaintiff had no past relevant work. AR 22. Considering Plaintiff's age, education, work experience and residual functional capacity, significant numbers of jobs that Plaintiff could perform existed in the national economy. AR 22. Accordingly, the ALJ found that Plaintiff was not disabled at any time from May 6, 2015, the application date, through May 22, 2018, the date of the decision. AR 22=23.

### VII. Sufficient Evidence Supported the Residual Functional Capacity Determination

Although Plaintiff does not allege error in determining her severe impairments at step two, Plaintiff contends that the ALJ erred at step four by failing to consider the effect of Plaintiff's obesity in combination with her sole severe impairment of degenerative changes of the right knee.

The Commissioner responds that the ALJ appropriately considered the evidence as a whole, including any contributory effect of Plaintiff's obesity.

### A. Medical Opinions

#### 1. Agency Physicians

On initial review, agency physician A. Khong, M.D., wrote:

> It appears the claimant re-established care with her TS on 4/21/15, just a couple of weeks before filing for disability. She needed a refill of her thyroid medications so it is likely that she had not been compliant with her medications for some time. Labs showed an elevated TSH of 39 and very low T3 and T4 levels consistent with inadequate treatment for hypothyroidism. The hematocrit was 28 % with low RBC indices. Iron studies were also low indicative of iron deficiency anemia. In this age range without any significant GI complaints, dysfunctional uterine bleeding needs to be ruled out as a cause. The claimant is in the menopausal range. Iron supplements have been started and the claimant has been referred for a GI workup. Although she has been referred to cardiology for c/o of dizziness and SOB, these symptoms, along with fatigue can all be explained by the combination of her hypothyroid state and the severe anemia.

AR 52.

Dr. Khong opined that with proper treatment of anemia and hypothyroidism, Plaintiff's physical complaints of dizziness and fatigue should resolve in less than one year. AR 52. Noting no new allegations on reconsideration, agency physician Keith M. Quint, M.D., agreed with Dr. Khong that with treatment Plaintiff's hypothyroid, anemia and insomnia would resolve in less than a year. AR 259-60. After noting Plaintiff's obesity, Dr. Quint opined that Plaintiff's physical impairments would have minimal impact on function. AR 260.

#### 1 Consultative Examination: Internal Medicine

Internist Tomas Rios, M.D., conducted a consultative examination on June 30, 2015. AR 237-41. Provided with no medical records, Dr. Rios relied on Plaintiff's report that she had been diagnosed with hypothyroidism in 2009 and with asthma recently. AR 237. Plaintiff reported that she performed her activities of daily living independently and helped with some household chores. AR 237.

///

///

Plaintiff's physical examination was normal in all regards. AR 238-40. Dr. Rios opined that Plaintiff had no functional limitations other than avoidance of chemicals, dust, fumes and gases due to her history of asthma. AR 240-41. The doctor wrote:

> The claimant has reactive airway disease but no clinical evidence of chronic hypoxic state. She also has a history of hypothyroidism but she is clinically euthyroid. She reports history of anemia but no significant symptoms noted on today's examination, No orthostatic symptoms provoked.

AR 240.

### 2  Nurse Frutes

In April 2015, after seeing Plaintiff three times, Lisa Frutes, F.N.P.-P.C., prepared a two-page residual functional capacity questionnaire. AR 219-20. Plaintiff's symptoms of dizziness, shortness of breath and fatigue, were often severe enough to interfere with the attention and concentration necessary to perform simple work-related tasks. AR 219. Her diagnoses were hypertension, shortness of breath and insomnia. AR 219. Plaintiff took prescription lisinopril, which caused drowsiness. AR 219. Plaintiff reported anemia but no lightheadedness or fainting. AR 237.

Plaintiff could walk one-half block without rest or significant pain; sit for thirty minutes at a time and stand or walk for ten minutes at a time. AR 219. In an eight-hour workday Plaintiff could sit three hours and stand or walk for two hours. AR 219. She needed to change positions at will. AR 219. Plaintiff would need an unscheduled break of fifteen to twenty minutes every half hour. AR 219.

Plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently. AR 220. She could reach, perform fine manipulation and grasp, turn or twist objects only twenty percent of the time in an eight-hour workday. AR 220. Plaintiff was likely to be absent from work more than four times monthly. AR 220.

### 3  Nurse Thomas

Nurse Thomas completed a medical source statement in September 2016. AR 261-67. Plaintiff's diagnoses were hypothyroidism, sciatica and obstructive sleep apnea, with symptoms of fatigue, dizziness, pain, "anemia issues," and shortness of breath.. AR 261. Plaintiff

experienced side effects from her prescriptions for Tylenol #3, Soma, Xanax and Lexapro, all of which were sedating. AR 261. Plaintiff's symptoms were affected by her depression and anxiety. AR 261.

Plaintiff was able to sit for twenty minutes at a time and stand for five to ten minutes at a time. AR 262. In an eight-hour workday Plaintiff could sit about two hours and stand or walk for less than two hours. AR 262. She needed to walk for five minutes every twenty minutes and to be able to change positions at will. AR 262. Plaintiff needed to use a walker due to imbalance, pain, weakness, insecurity and dizziness. AR 265.

Plaintiff could rarely lift twenty, ten or less than ten pounds and never lift fifty pounds. AR 265. She could never crouch, squat or climb stairs or ladders. AR 265. She could rarely stoop or bend and occasionally twist. AR 265. Plaintiff had significant limitations of her upper extremities and was limited bilaterally to using her hands to grasp, turn and twist objects, and to use her arms to reach overhead, five percent of the workday. AR 265. She could reach forward bilaterally ten percent of the workday. AR 265.

Plaintiff was likely to require unscheduled breaks eight to ten times daily for five to ten minutes due to pain/paresthesia, numbness and the adverse effects of medication. AR 262. She needed to keep her legs elevated 80 per cent of the time. AR 262. Plaintiff was likely to miss more than four workdays monthly. AR 263, 266.

Evaluating Plaintiff's mental impairments, Nurse Thomas opined that Plaintiff had no impairment of her ability to understand, remember or carry out very short and simple instructions; ask simple questions or request assistance; and, accept instruction and respond appropriately to criticism from supervisors. AR 264. About five percent of the workday Plaintiff would be unable to remember work-like procedures; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in an unfamiliar place; and, use public transportation. AR 264, 266. About ten percent of the workday, Plaintiff would be unable to maintain attention for a two-hour segment;

perform at a consistent pace without an unreasonable number and length of rest periods; and, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. AR 264. About fifteen percent of the workday Plaintiff would be unable to maintain regular attendance, and be punctual within customary, usually strict tolerances; complete a normal workday or workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; and, deal with normal work stress. AR 264. Plaintiff was likely to be off task five to ten percent of the workday. AR 265. She was only capable of low stress work and would have good days and bad days. AR 265.

### B. Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (residual functional capacity is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining residual functional capacity). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"In determining a claimant's [residual functional capacity], an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence,

stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Nurse practitioners are not evaluated as if they were physicians. A nurse practitioner is not considered an acceptable medical source under 20 C.F.R. § 416.913.[3] Instead, nurse practitioners are considered to be other sources. 20 C.F.R. § 416.913(d)(1) (listing medical sources that are considered other sources, including nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists). Unlike the opinions of physicians, the opinions of nurse practitioners are not entitled to special weight. An ALJ may reject the opinions of other sources by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Factors used to evaluate a nurse practitioner's opinion include: (1) examining relationship; (2) length of treatment relationship and frequency of examination; (3) supportability

///

---

[3] The Social Security Administration has recently adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revisions do not apply to Plaintiff's claim, which was filed May 6, 2015.

11

of opinion; (4) consistency with the record; (5) specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 416.927 (c) and (f)(1).

### C. The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

In the course of her assessment of the medical opinions, here the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 35. The ALJ explained:

> The claimant reported experiencing some right knee pain, but there is not much evidence of treatment for the condition, In fact, in October 2015, an examination of the musculoskeletal system, showed no evidence of bony tenderness, joint effusion, enlargement, or abnormal motion. There was also no muscle atrophy, muscle weakness, asymmetry or reduced range of motion and she exhibited full motor strength in all muscle groups with a normal gait. An x-ray of right knee taken in December 2017 did show some mild tri-compartmental osteoarthritis and a subsequent magnetic resonance image (MRI) revealed articular cartilage degenerative changes in the medial compartment, but there was no meniscal tear. As for treatment, she reported taking Naproxen for pain and inflammation but there is no evidence of any invasive treatment and she failed to show up for numerous appointments.

AR 20 (citations to administrative record omitted).

The ALJ again addressed Plaintiff's credibility at the close of her residual functional capacity analysis:

> The claimant's statements and complaints are not fully consistent with the medical and other evidence. For example, she stated she was prescribed a walker to ambulate but no evidence supports this. In fact, Dr. Rios found she had a normal gait and station with a negative Romberg test. The claimant further alleges suffering from significant limitations that prevent her from working, but that is inconsistent with an examination of musculoskeletal system, which showed no evidence of bony tenderness, joint effusion, enlargement, or abnormal motion. In addition, there was also no muscle atrophy, muscle weakness, asymmetry or reduced range of motion and she

12

> exhibited full motor strength in all muscle groups with a normal gait. An alleged inability to work is also inconsistent with the claimant's report that she is capable of helping with some household chores and she is independent with activities of daily living. Finally, her documented failure to show up for numerous medical appointments indicates her conditions are not as severe as alleged.

AR 21-22 (citations to administrative record omitted).

The ALJ acknowledged the opinions of the agency physicians, Drs. Khong and Quint, who concluded that just after Plaintiff's application for benefits in 2015, Plaintiff had no severe impairment including her obesity. AR 20. The ALJ noted that consultative examiner, Dr. Rios, also opined that Plaintiff had no exertional, postural or manipulative limitations, but she declined to adopt the environmental limitations to which Dr. Rios opined since the restrictions were not supported by the record as a whole, or Dr. Rios' own examination of Plaintiff. AR 20. In light of later evidence of the degenerative changes in Plaintiff's right knee joint, however, the ALJ limited Plaintiff to light work as more consistent with the evidence as a whole. AR 20. The ALJ stated that the limitation to light work "more than adequately accounts for the degenerative changes, especially in light of the lack of consistent treatment, the missed appointments and an examination of the musculoskeletal system showing no evidence of bony tenderness, joint effusion, enlargement, or abnormal motion. AR 20 (citations to administrative record omitted).

The ALJ gave little weight to the opinions of Nurses Flores and Thomas, finding both opinions over-restrictive; inconsistent with medical evidence, particularly the mild findings related to Plaintiff's knee impairment; and also inconsistent with evidence of Plaintiff's ability to help with household chores and independently perform her activities of daily living. AR 21.

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. S/he properly determines the weight to be given each medical opinion by considering the evidence in the record, as the ALJ did here. 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The record must include objective evidence to support the medical opinion of the claimant's residual functional capacity. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Inconsistencies with the overall record or with a physician's own notes are a valid

13

basis to reject a medical opinion. *Molina*, 674 F.3d at 1111-1112 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (rejecting physician's opinion when treatment notes provide no basis for the opined functional restrictions); *Tommasetti*, 533 F.3d at 1041 (incongruity between questionnaire responses and the Plaintiff's medical records is a specific and legitimate reason for rejecting an opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-693 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion).

Notably, no medical expert opined that Plaintiff's obesity was a severe impairment. Although Plaintiff now contends that her obesity was capable of exacerbating her right knee pain, no evidence in the record supports her contention. Where the record does not include evidence of a functional limitation due to obesity, or an indication that the claimant's obesity exacerbated another impairment, the ALJ is not required to consider a claimant's obesity in combination with other impairments. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). *See also Rocha v. Colvin*, 633 Fed.Appx. 894, 897 (9th Cir. 2015) ("The ALJ properly considered Rocha's obesity in making his determinations. The ALJ noted there was little evidence in the record to suggest Rocha was limited by her obesity"); *Garcia v. Comm'r of Soc. Sec. Admin.*, 498 Fed.Appx. 710, 712 (9th Cir. 2012) (the ALJ appropriately found that the claimant's obesity did not impact the residual functional capacity where the Plaintiff "did not provide any evidence of functional limitations due to obesity"); *Hoffman v. Astrue*, 266 Fed.Appx. 623, 625 (9th Cir. 2008) ("The ALJ's failure to consider Hoffman's obesity in relation to his RFC was proper because Hoffman failed to show how his obesity in combination with another impairment increased the severity of his limitations").

The Court is not required to accept Plaintiff's characterization of her treatment records or her assessment of the medical opinions. The ALJ fully supported her determination based on multiple medical opinions and the evidence of record. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as

///

well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### VIII. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Teresa R. Coronado.

IT IS SO ORDERED.

Dated: **April 8, 2020**        **/s/ Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE